## STATE v. DUKES.

1. IRRELEVANT TESTIMONY.—On the trial of four persons indicted as accessories before the fact to the crime of arson, testimony as to a burning other than that charged, as to the appearance and disappearance of a stranger in the community, and as to the remark made by the wife of one of the

accused in his presence at the time of his arrest, that she had "been dreaming of this trouble for three months," was all irrelevant, and its admission constituted reversible error.

2. EVIDENCE—COMPLETED CONSPIRACY.—Testimony detailing the conversation between two persons, other than the accused, after the burning, inculpating two of the defendants, was improperly received.

Before GARY, J., Darlington, March, 1893.

This case was tried before Ernest Gary, Esq., judge elect of the Fifth Circuit, holding the courts of the Fourth Circuit by special appointment in the stead of Judge Kershaw, prevented by illness. It was a prosecution against John Dukes, Hardy Morris, John Williams, and Harrison Gordon. The indictment contained four counts, but the grand jury found "no bill" on the first three, and "true bill" only on the last. This fourth count charged these four defendants with being accessories before the fact to the burning, by a person unknown, of the barn and stables of Edward L. Gray, within two hundred yards of his dwelling and appurtenant thereto, on January 8, 1893.

*E. L. Gray*, prosecutor, was permitted to testify that not long before this burning a store was robbed and the depot at Lamar was burned, both in his neighborhood. This testimony was received on the solicitor's assurance that it was his purpose to prove a conspiracy. This same witness testified that before Christmas there was a person in the neighborhood selling knives very cheap. *R. P. Williford*, a witness for the prosecution, testified that when John Williams was arrested, his wife said: "Oh, Lord, I have been dreaming of this trouble for three months," and that John Williams said nothing. *J. R. Copeland*, a witness for the prosecution, testified to seeing a man named John Henry undressed on the night of the burning of the depot, and told what the man said about seeing the fire start, and about buckets at the fire, &c. *John Green*, a witness for the State, in reply, testified that after the burning of the barn, he heard Bob Malloy say to Wiley Peoples that "We have done burnt it now, and I am going to North Carolina," and carry Oliver Peoples with him, and that John Grabb, John Dukes, and Dennis Fields were watchers at the time of this burning. All of the above testimony was objected to by defendants.

The defendants were found guilty, with a recommendation to mercy, and sentenced to hard labor in the penitentiary for ten years. Thereupon they appealed to this court.

*Messrs. Boyd & Brown,* for appellants.

*Mr. Johnson,* solicitor, contra.

March 2, 1894. The opinion of the court was delivered by

MR. JUSTICE POPE. The defendants were indicted as accessories before the fact of the crime of arson, and their trial came on before Judge Gary and a jury at the spring term, 1893, of the Court of General Sessions for Darlington County, in this State. The verdict was guilty, with a recommendation to mercy. The defendants were duly sentenced to the State Penitentiary, and they have appealed from such judgment on the following grounds:

That his honor erred: 1. In permitting prosecutor, E. L. Gray, to testify as to the alleged crime committed in the neighborhood about the time of the alleged arson charged in the indictment. 2. In permitting the said E. L. Gray to testify to a strange person in the community selling knives, and to his disappearance. 3. In permitting R. P. Williford, a witness for the prosecution, to testify as to a remark made by the wife of the defendant, John Williams, at the time of the arrest of the said John Williams. 4. In permitting J. R. Copeland, a witness for the prosecution, to testify to what he observed, and as to statements made to him by a person' in his night clothes at the burning of the Lamar depot. 5. In permitting John Green, a witness for the prosecution, to testify as to the declarations made by one Malloy to one Wiley Peoples after the alleged arson charged in the indictment, it being respectfully submitted that no sufficient foundation had been laid for the admission of the said testimony, that no particular and urgent circumstances had been shown justifying his honor in the admission of said testimony in the exercise of his discretion, and that the statement admitted was a narrative of past circumstances. 6. In permitting Dick Dorrity, a witness for the prosecution, to

testify as to remarks made by Oliver Peoples and others in front of witness' home, on the night of the arson alleged.

There can not be, and ought not to be, any sympathy felt for the perpetrators of this dreadful crime. He who applies the torch to the dwelling house or building within the curtilage of the same, in the night time, becomes an enemy to the human race. And yet the wisdom and humanity of our forefathers, sharing, as they did, in our loathing of this very crime, have laid down certain wise rules for the government of the trial of persons charged with this and other crimes; and whenever these rules are broken in such trials, it is made the duty of courts of last resort to correct such errors by granting new trials. These preliminary remarks are made because we feel that these rules have been broken in the trial of these defendants, and that a new trial must be awarded them.

We fail to see that the testimony, objected to and admitted after such objection, as set out in the first four exceptions, was relevant to the issue made up between the State and the defendants. Let us look at this testimony fairly and squarely. The issue as made in the third count of the indictment was that these four defendants counseled, aided, and abetted some person to set fire to the barn and crib of Mr. E. L. Gray on the night of 8th January, 1893. Anything and everything in testimony which would throw light upon this issue joined was relevant to the trial of these defendants. Certainly the burning of the depot at Lamar did not enter into this charge. Nor did testimony of the presence of a strange man in that community and his disappearance afterwards bear upon this issue. Nor did the remark of the wife of the defendant, John Williams, made on his arrest for this crime, tend to throw any light upon this issue. Nor did the remark of some one in his night clothes on the night of the burning of the depot at Lamar, as testified to by Mr. Copeland, have any bearing upon the issue here involved.

The fifth exception is freighted with the gravest error. It seems that a colored boy, Green, was allowed to testify to a conversation between two negro men, Malloy and Peoples, who were not defendants; such conversation oc-

curring after the crime of arson had been committed, and in which conversation the two men in conversation inculpated two of the defendants in the crime. The admission of such testimony over defendants' objection would of itself entitle these defendants to a new trial if everything else had been regular. The admission of such testimony, as to declarations made after the conspiracy had ended, such declarations being made by others than the defendants, is at variance with all the text writers on this branch of the law, and is in direct conflict with the decisions of this court. Mr. Greenleaf, in his work on Evidence, section 111, says: "And here, also, care must be taken that the acts and declarations thus admitted be those only which were made and done during the pendency of the criminal enterprise and in furtherance of its objects. If they took place at a subsequent period, and are, therefore, merely narrative of past occurrences, they are, as we have just seen, to be rejected." Also, see section 110 of the same author. Our own court has referred approvingly heretofore to these sections of this author's work. *State* v. *Brown,* 34 S. C., 46 ; *State* v. *Green, ante,* 328.

We do not mean to restrict investigations in our courts in the laudable purpose to unearth crime and thereby protect society, especially in those cases where a network of circumstances are relied upon to convince juries of an alleged offence against our laws ; for it is true that much latitude is required in such cases. But we feel that society will be more surely protected by an observance of the limitations placed by law as to the competency of testimony.

The judgment of this court is, that the judgment of the Circuit Court be reversed, and the cause be remanded for the purpose of a new trial, and that the clerk of this court send down the *remittitur* forthwith.